UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:11-000145 |
| ) | Chief Judge Haynes |
| ) | |
| TACKERETTE BIGBEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

The United States filed this action charging the Defendant Tackerette Bigbee with possession with the intent to distribute crack cocaine, possession with intent to distribute crack cocaine and cocaine, and as a convicted felon in possession of firearms.

Before the Court is Defendant Tackerette Bigbee's third motion to suppress (Docket No. 75), to which the Government responded (Docket Entry No. 81). Defendant contends, in sum: (1) that the warrantless search of his home was unreasonable and that the seizure of the keys to the storage unit and a small plastic bag containing a white powdery substance should be suppressed; (2) that the search warrants were issued without probable cause as there was no showing in either affidavit as to the credibility of the confidential informants; (3) that the search warrants were invalid because the delay between the time Defendant was arrested and the time that the warrants were executed was unreasonable; and (4) that the evidence seized in Defendant's home should be suppressed because the search was executed during Defendant's absence.

In response, the Government contends that the Court previously determined that the warrantless entry into Defendant's residence was permissible to prevent the destruction of evidence, that the application for a search warrant was supported by probable cause and that later-occurring events corroborated the confidential informant's reliability, that the delay between arresting Defendant and applying for a search warrant was reasonable, and that the police were permitted to execute the search warrant in Defendant's absence.

## A. Procedural History

In his original motion to suppress (Docket Entry No. 31), Defendant argued that he was arrested in his home without a warrant, that the search warrants for the storage unit and his home were faulty as the warrant affidavits contained misrepresentations and omissions, and each warrant lacked particularity. The Court held a hearing on Defendant's motion to suppress on March 16, 2012. (Docket Entry No. 43). At the conclusion of the hearing, the Court determined that based upon the proof presented there were no omissions or misrepresentations in the warrant affidavits and that based upon the facts set forth in the applications for search warrants, probable cause existed to search the storage unit and Defendant's residence. (Docket Entry No. 45, Transcript at 60-61). The Court took the issue about exigent circumstances and Defendant's arrest under advisement. Id. at 61. Thereafter, the Court entered its Order denying Defendant's motion to suppress, concluding as follows:

> Based upon the officer's testimony of what they observed, and the controlled and recorded drug buy from the Defendant with a confidential informant, the Court concluded that the state court search warrant was based upon probable cause. Thus, the state court warrants to search the storage area and the Defendant's residence was supported by probable cause.

> As to the legality of the Defendant's arrest, the same facts giving rise to the search warrant were known to the officers at the time of the Defendant's arrest just outside his residence on his porch. With the controlled buys inside the Defendant's residence, a warrantless entry into the Defendant's residence is permissible to prevent the destruction of evidence. Brigham City v. Stuart, 547 U.S. 398, 403 (2006). In addition, the officer's testimony was that upon announcement of the officer's presence, at the door of the residence noises were heard inside the house shortly before the Defendant's arrest. The undisputed facts are that this Defendant had a history with local officers of destroying evidence in attempted drug arrests.

(Docket Entry No. 52).

Defendant filed a second motion to suppress (Docket Entry No. 68) contending that the state search warrant under which the proof in this action was secured was invalid. The Defendant argued that the warrant failed to identify the police officer to whom the warrant was issued and thus, the warrant was invalid under Rule 41 of the Tennessee Rules of Criminal Procedure and that the execution of the search warrants violated Rule 41 of the Federal Rules of Criminal Procedure because the executing officers failed to indicate the time that both warrants were executed. Defendant also challenged the reliability of the confidential informant. In denying Defendant's second motion to suppress, the Court, citing State v. Hurd, 2001 WL 348871 at *6-7 (Tenn. Crim. App. Apr. 10, 2001), stated that "although the warrants were delivered to the detective, the warrants were directed '[t]o any peace officer within or of [Robertson] County'" and therefore valid under Tennessee law. (Docket Entry No. 73, Memorandum at 3). The Court also concluded that Fed. R. Crim. P. 41(b) applies only to federal officers. Id. Moreover, the Court stated that "as to credibility of the informant, the informant's recorded drug transactions with the Defendant and the detective's personal observation of the drug transaction are deemed sufficient to credit the confidential informant's statement about the Defendant." Id. at 4.

**Review of the Record**

On the afternoon of June 29, 2011, Shalatio Bell, a confidential informant with the Springfield Police Department, agreed to conduct a controlled purchase of crack cocaine from Defendant at 400 19th Avenue West in Springfield, Tennessee. Prior to this transaction, Eddy Stewart, a detective with the Springfield Police Department, searched Bell and his vehicle that were free of any contraband. (Docket Entry No. 75-1, Incident Report, at 2). The Springfield Police officers supplied Bell with pre-recorded United States currency in the amount of $2,100, as well as an electronic listening and recording device. Id. Springfield Police officers monitored Bell's movements until he reached the Defendant's residence and recorded Bell's conversation with Defendant.

After Bell arrived and gained entry into Defendant's residence, Defendant told Bell to remain at the residence and then left the residence in his own vehicle. Id. Springfield Police officers followed Defendant to a storage facility at 1304 5th Avenue West in Springfield, where the Defendant briefly entered and then exited a storage unit. Id. Defendant then left the storage area facility and returned to his residence. Id. Springfield Police officers were able to see Defendant's vehicle during his return to his residence except for a brief period when Defendant's vehicle turned onto the street of his residence. Id.; (Docket Entry No. 45, Transcript at 19-20, 32, 43-44). At that point, Bell informed Stewart that Defendant had a man with him. Id. Stewart did not see anyone enter Defendant's residence nor hear anyone inside the house other than Defendant and the informant. (Docket Entry No. 45, Transcript at 25).

After Defendant returned to his residence, he asked Bell to purchase cigarettes at a nearby store and Springfield Police officers watched Bell as he did so. Id. Upon Bell's return, Defendant

4

allowed Bell to enter the residence where Bell purchased approximately two ounces of crack cocaine from Defendant for $2,100.00 with the pre-recorded currency. Id. at 3.

Bell then left the Defendant's residence, and Springfield Police Officer Chuck Consiglio followed him and recovered the suspected crack cocaine that a field test revealed to be cocaine base, or crack cocaine, weighing approximately 56.7 grams. (Docket Entry No. 75-2 at 3; 75-1 at 4). At about 12:37 p.m., Bell advised Stewart that as he was leaving he observed about three more ounces of crack cocaine on Defendant's stove. (Docket Entry No. 75-1 at 3). At approximately 12:40 p.m., Springfield police officers approached Defendant's residence and arrested Defendant on a "buy bust." (Docket Entry No. 75-2 at 3; 75-1 at 3). Stewart testified:

> Q. When you arrested the defendant, why did you arrest him immediately and not wait for an arrest warrant?
> A. Because we had just made a controlled buy, a buy bust. That's what we call it.
> Q. Did you have a history with this defendant?
> A. I did.
> Q. And have you had occasion where evidence has come up missing with this particular defendant?
> A. Yes.
> Q. When you went to the door and knocked, did you see the defendant acknowledge that law enforcement was outside?
> A. I did see a -- like a little curtain on the window move up, and then I heard a lot of changing noises and movement, fast movement, inside.

(Docket Entry No. 45 at 39).

According to Stewart's incident report:

> Detective Joyce went to the front door . . . and I went to the back door . . . . I knocked and heard Tackerette Bigbee say, "Who is it?". I saw the cloth curtain over the door window move back and fell back into place quickly. I knocked again while announcing, "Police! Tackerette, come out. I need to talk with you." I could hear fast movement, clanging noises, rustling noises, and what sounded like paper or plastic bags being smashed and Tackerette saying, "I'm coming!" I asked again, "come out! I need to talk!" I could still hear fast movement and sounds like plastic bags being smashed and crumpled. I was concerned evidence was being destroyed

5

and that the buy money may be flushed or destroyed along with any contraband. I kicked the door twice without damaging it. Mr. Bigbee then opened the door and at that time he was secured and taken into custody . . . . During a search incident to arrest I recovered $2,100.00 in U.S. currency from the right front pants pocket of Mr. Tackerette Bigbee. I immediately checked several serial numbers of the U.S. currency . . . . The U.S. currency proved to be the currency pre-recorded "buy money" . . . .

(Docket Entry No. 75-1, at 3-4). Stewart testified: "[Bigbee] stepped right out on the – right outside the door, and I just kind of took him into custody." (Docket Entry No. 45 at 37).

After Defendant's arrest, the officers entered and conducted a sweep of the residence "to make certain no one else was inside that could cause harm to officers and/or destroy evidence." (Docket Entry No. 75-1 at 4). While clearing the residence, Stewart observed a bag on the dresser containing a white powdery substance that was suspected to contain cocaine. Id. The bag was packaged in a way that was consistent with cocaine packaged for resale. Id. In applying for a search warrant for Defendant's residence, Stewart's affidavit provides, in relevant part:

This department has received a complaint about the sale of cocaine by Tackerette D. Bigbee, B/M, D.O.B. 04-27-73 the residence of 400 19th Ave. West, (1900 Gladys) Springfield, TN.

Within the last 72 hours, affiant had a confidential informant (C.I.) that informed affiant that they have purchased large amounts of crack cocaine for resale on at least eight (8) occasions from Tackerette Bigbee at the suspect residence within the last two months. Based on this information, affiant had the C.I. set up a buy of 2.0 OZ. of crack cocaine via text messaging to (615) 681-6547 (listed in C.I.'s phone contacts under the name "Tac"), from Tackerette Bigbee and sent the C.I. to the said property, and made a controlled buy of crack cocaine from Tackerette D. Bigbee, B/M, D.O.B. 04-27-73, on this date (June 29, 2011). Prior to the C.I. arriving at the property, this affiant searched the C.I. and the C.I.'s vehicle, to verify that they did not have any narcotics in his possession. Affiant observed the C.I. knock on the back door of the said residence and Tackerette came to the door and made contact with the C.I. at the said residence. Tackerette Bigbee left and was observed by officers going to the Springfield Self Storage #1 located at 1304 5th Ave West in Springfield, TN and went to the fourth building west of the office, and to a rental storage unit on the west side of the building believed to be Unit # 353. Mr. Bigbee then left and went straight back to the residence where the C.I. was waiting at the back door. After several

minutes I could hear conversation about the $2,100.00 and arranging to meet again in 2 weeks. This C.I. was inside the back door entrance in the kitchen area. Immediately after the C.I. left the said property, this affiant had Officer Chuck Consiglio stop the C.I. and searched the C.I. and was handed by the C.I. crack cocaine with an EGW of 56.7 Grams that he purchased from Tackerette D. Bigbee, B/M, D.O.B. 04-27-73. This C.I. stated they observed crack cocaine that is consistent with the resale of cocaine in the possession of Tackerette D. Bigbee, B/M, D.O.B. 04-27-73, at the said residence on this date (June 29, 2011). Immediately Tackerette Bigbee was arrested on this "buy bust" at the suspect residence and the photocopied buy money totaling $2,100.00 was found in his right front pocket. While officers secured the residence and while clearing the residence for officer safety and to preserve any possible evidence while this officer obtains a search warrant, this affiant observed in plain view a clear bag of a white powder substance believed to be powder cocaine on a desk in a bedroom on the southwest end of the suspect residence.

(Docket Entry No. 75-3 at 3).

As to Stewart's affidavit for a search warrant for the storage unit, Stewart attests that:

Officers secured the Storage unit # 353 while obtaining a search warrant. A second C.I. contacted this affiant and advised that there are firearms in the storage unit in Michelle Browder's name (#353). Approximately three different C.I.'s have advised this affiant in the past that Ta[c]kerette Bigbee stores his cocaine in a storage building at 5th Ave W. and Central Ave.

(Docket Entry No. 75-2 at 3).

The application for the search warrants were received at 2:57 and 2:59 p.m. (Docket Entry No. 75-3 at 2 and 75-2 at 2). The state court judge issued both search warrants at 3:56 p.m. Id. Once the officers secured the search warrants, officers found powder and crack cocaine at both locations. (Docket Entry No. 75-1 at 4). The officers also found money and firearms at the storage unit. Id. The storage unit was unlocked with keys, claimed by Defendant, that were discovered by the bag containing the white powdery substance on top of Defendant's dresser in his residence. Id.

### C. Conclusions of Law

Defendant argues that the warrantless search of his home was unreasonable and that the seizure of the keys to the storage unit and a small plastic bag containing a white powdery substance should be suppressed. The Court previously addressed this contention, concluding that based upon the officers' observations and the controlled and recorded drug buy from Defendant with a confidential informant, the search warrant for Defendant's residence was based upon probable cause and the warrantless entry into Defendant's residence was appropriate to avoid the destruction of evidence, citing Brigham City v. Stuart, 547 U.S. 398, 403 (2006). (Docket Entry No. 52). The Court also noted that after the announcement of the officers' presence, noises inside Defendant's residence were heard and that the undisputed facts were that Defendant had a history of destroying evidence in attempted drug arrests by local officers. Id. This claim is without merit.

Citing Horton v. California, 496 U.S. 128, 136 (1990), Defendant also argues that the seizure of Defendant's storage key under the plain-view doctrine was improper because "[t]he vast majority of adults in the country possess keys. Possession of keys would not in any manner or form, lead a reasonable person to conclude that an individual is involved in criminal activity." Yet, the police officers did not seize Defendant's keys under the plain-view doctrine, as the officers obtained a search warrant before searching Defendant's home or storage unit. Nor did Stewart mention the keys in his application for a search warrant. The discovery of the keys was incidental to developing probable cause to search the storage unit that was based upon Defendant's visit to the storage unit during the controlled buy and the fact that three different C.I.'s advised Stewart in the past that Defendant stored his cocaine in that storage unit.

As to the plastic bag containing a white powdery substance, Stewart noted in his affidavit for a search warrant for Defendant's home that he "observed in plain view a clear bag of a white powder

substance believed to be powder cocaine." Yet, the officers obtained a search warrant before seizing the purported cocaine from Defendant's residence. Accordingly, Defendant's contentions are without merit.

As to Defendant's contention that the search warrants were issued without probable cause as there was no showing in either affidavit as to the confidential informants' credibility, the Court previously ruled that the search warrants were supported by probable cause and that later-occurring events confirmed the confidential informant's reliability. See Docket Entry No. 52, Order; Docket Entry No. 73, Court's Memorandum at 1, 4). Here, Stewart detailed the controlled purchase and the connection between Defendant's residence and the storage unit as officers observed Defendant leave his residence, travel to and remain briefly at the storage unit, and immediately return back to his residence. Stewart also described that the C.I. had purchased crack cocaine for resale on at least eight occasions at Defendant's residence. Stewart described the controlled purchase that corroborated the C.I.'s information. The purchase was controlled and witnessed by Stewart who searched the C.I. for contraband. Stewart provided the C.I. with pre-recorded funds, observed the CI enter and exit Defendant's house, and had an officer recover the crack cocaine the C.I. purchased from Defendant. Thus, under the totality of the circumstances, Illinois v. Gates, 462 U.S. 213, 230 (1983), the information set forth in Stewart's affidavit adequately corroborated the C.I.s' credibility. See United States v. Coffee, 434 F.3d 887, 893-95 (6th Cir. 2006).

Next, Defendant contends that the delay between the time Defendant was arrested, 12:40 p.m., and the time that the search warrants were executed was unreasonable and therefore the search warrants are invalid. Without citing any legal authority or facts in support, Defendant argues:

> For some unexplained reason, Detective Stewart did not present his application for a search warrant . . . until after over three hours had elapsed. Detective Stewart would have the Court believe that during this over three hour time period, both Mr. Bigbee's home and the storage unit were under constant surveillance by members of the SFPD. This contention defies common sense.
>
> The period of delay in the execution of the warrants indicates that the information upon which the affidavits were based was no longer valid.

(Docket Entry No. 75 at 9). Defendant appears to argue that there was an unreasonable delay between his arrest and the search of his residence. Yet, Defendant does not cite any case law on this issue as this case does not involve a situation where evidence is seized and there is a delay in serving a search warrant. The Court construes Defendant's argument as one of staleness.

The Fourth Amendment's "'central requirement' is one of reasonableness." Illinois v. McArthur, 531 U.S. 326, 330 (2001) (quoting Texas v. Brown, 460 U.S. 730, 739 (1983)). Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Thus, "[t]o demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" United States v. Frazier, 423 F.3d 526, 531 (6th Cir.2005) (internal quotations and citation omitted). "Probable cause is based on the totality of the circumstances; it is a 'practical, non-technical conception that deals with the factual and practical considerations of everyday life.'" United States v. Abboud, 438 F.3d 554, 571 (6th Cir. 2005) (internal quotations and citations omitted). The probable cause needed for a search warrant " 'is concerned with facts relating to a presently existing condition.' " United States v. Spikes, 158 F.3d 913, 923 (6th Cir.1998) (quoting W. LaFave, Search and Seizure § 3.7 at 338 (3d ed.1996)). "Thus, the critical question is whether the information

contained in the affidavit, when presented to the . . . judge, established that there was a fair probability that [evidence of the crime] would still be found at [the premises of the proposed search]." Id.

Whether information contained in an affidavit has become stale "'must be determined by the circumstances of each case.'" Id. (quoting Sgro v. United States, 287 U.S. 206, 210-11 (1932)). "[T]he length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." Abboud, 438 F.3d at 571 (quoting Spikes, 158 F.3d at 923). Thus, even if a substantial amount of time elapsed between "'a defendant's last reported criminal activity'" and the issuance of the warrant, the warrant may not be stale. Id. (citing Spikes, 158 F.3d at 923). Several factors are considered when analyzing staleness: (1) the character of the crime (chance encounter in the night or regenerating conspiracy?); (2) the criminal (nomadic or entrenched?); (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?); and (4) the place to be searched (mere criminal forum of convenience or secure operational base?). Id. at 572-73 (citations and quotation marks omitted).

Here, the police officers approached Defendant's residence at approximately 12:40 p.m. and, following Defendant's initial delay in surrendering to police, arrested Defendant sometime thereafter, followed by a protective sweep of the premises. The police officers recovered from Defendant the "buy money" that matched the serial numbers to the pre-recorded currency. Officers secured the residence as well as the storage unit. Stewart completed two lengthy affidavits detailing probable cause to search the residence and storage unit; and traveled to the Robertson County Courthouse to present the applications for the search warrants. The applications were filed with the clerk at 2:57 and 2:59 p.m., barely over two hours after officers moved to arrest Defendant. Further, the

uncontroverted facts reflect that Springfield Police officers secured each scene and guarded both locations until Stewart was able to obtain a search warrant. Having failed to present any factual or legal support, Defendant's contention is without merit. See United States v. Pinson, 321 F.3d 558, 565 (6th Cir. 2003) (where a C.I. made a controlled purchase three days before the warrant was issued and executed, the Sixth Circuit found that the warrant was not stale); United States v. Finch, 998 F.2d 349, 352 (6th Cir.1993) (finding that a search warrant affidavit was sufficient to establish probable cause even though it was five days before the issuance of the warrant that the informant had seen cocaine being stored and sold).

Finally, Defendant contends that the evidence seized from Defendant's home should be suppressed because the search was executed at a time when the executing officers knew Defendant was absent. Defendant cites United States v. Grevato, 340 F. Supp. 454 (E.D. Pa. 1972), but that decision was vacated by United States v. Grevato, 474 F.2d 40 (3d Cir. 1973) cert. denied, 414 U.S. 864 (1973) ("We reverse because we do not believe that the Fourth Amendment requires the occupant to be present before his home can be searched under a valid search warrant...."); see also United States v. Agrusa, 541 F.2d 690, 700 (8th cir. 1976); Payne v. United States, 508 F.2d 1391, 1393-94 (5th Cir. 1975), cert. denied, 423 U.S. 933 (1975); United States v. Watson, 307 F. Supp. 173, 176 n.2 (D.C.D.C. 1969) ("When an officer seeks to execute a search warrant, it is immaterial to completion of his task whether the occupant of the house is or is not at home. He can accomplish the task authorized by the magistrate just as effectively in either case."); United States v. Hawkins, 243 F. Supp. 429, 432 (E.D. Tenn.1965).

Defendant does not cite any valid case law in support, nor any applicable rule under the Federal Rules of Criminal Procedure to support his argument.[1] Here, as previously determined, Stewart's search warrant was supported by probable cause and the search of Defendant's residence lawful. Accordingly, Defendant's contention is without merit.

For the reasons stated herein, Defendant's motion to suppress (Docket Entry No. 75) should be denied.

An appropriate Order is filed herewith.

**ENTERED** on this the _8th_ day of January, 2014.

_____
WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

---

[1] Rule 41(f)(B) of the Federal Rules of Criminal Procedure appears to contemplate a defendant's absence during the search of that defendant's premises. See id. ("An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.").